Our final case for argument this morning is Vargas v. DeJoy. Mr. Sade. Good morning, Your Honor. May I begin my opening statement? Please. Okay. Good morning, Your Honors. May it please the Court. My name is Sam Sade and I'm an attorney for the appellant in this case. This is an appeal from the decision of the District Court to grant a defense motion for summary judgment on plaintiff's claim of discrimination under the Rehabilitation Act of 1973 and racist discrimination and retaliation claims under Title VII of the Civil Rights Act. Now, very briefly, the elements of the ADA failure to accommodate claims are the failure that the plaintiff must be a qualified individual with a disability, that the employer must be aware of that disability, and the employer must not fail to reasonably accommodate disability. In this case, the District Court had to look at appellant's job functions to determine if the tasks he had sought to be relieved from were essential functions, because if they were, then he would not be considered a qualified individual with a disability. Mr. Sade, before you get into the evidence, can I ask you a clarifying question that I think may help us think about it? Yes, Your Honor. Here's what I have a very hard time with from the briefing. What period of time is at issue? Is it just March 14th to March 22 of 2011? Or is the time period broader than that? And where is that question answered in the record? So Your Honor, my understanding is that most of the actions that are relevant in this case are from March 14th to March, I believe March 22nd. Where that's addressed in the record, I confess I can't pinpoint that to you right now in the Rule 56 statements of both parties. So if that's, that seemed, that was my intuition coming in, okay? So we have a Rehab Act claim, a Title VII Act, a Title VII claim, race-based retaliation. And what you're, I think what you're confirming is we should focus on an eight-day period and what the evidence is in that eight-day period. And that's what this appeal is about. Yes, Your Honor. I think the damages, that time period is more relevant to damages. But I think we should look at the U.S. Postal Service's actions regarding other employees outside of that time period to get a comprehensive sense of what, you know, how the post office treated comparators. So for that purpose. One of the reasons I'm asking that, okay, as you, I mean, I'm sure you're probably many steps ahead of me as I ask that question. But I'm asking that question because if March 14th to March 22nd is the relevant time period, that seems to me to be the time period within which we have to ask whether your client is a qualified employee and whether there was any accommodation that was even available. Yes. But if we're, so in that eight-day period, right? Yes. Yes, Your Honor. May I continue? Please. Okay. So the court, the district court held that the job description left some ambiguity as to whether lifting a certain amount of weight or shuttling equipment were essential functions of the position. Therefore, the court correctly held that regarding the first element of the ADA claim, that appellant, that a jury should decide if an appellant was a qualified individual under the ADA. Nevertheless, the court found that appellant did not satisfy the third element of the ADA claim to show that the employer failed to reasonably accommodate for his request to be relieved from those tasks. There are just a few legal flaws in this argument, we believe. First, the reasonableness of a request for accommodation is to be determined by a jury. The ADA itself does not have a definition for the phrase and the term is flexible. The evidence regarding an employee's employer's past practices is relevant to what should be considered reasonable under the facts of a specific case. And notably, and this is an honorable fact, the circuit, this circuit has held that reallocating and redistributing marginal job functions can be considered reasonable accommodation. So the district court held that the appellant's request was not reasonable because, quote, this request was for the Postal Service to manufacture a new position for Vargas, which the law does not require, end quote. But this holding is inconsistent with the court's finding earlier that the functions appellant had sought to be relieved from doing may not have been essential functions of the position in the first place. In other words, if the jury finds that those functions were not essential, that would mean that those functions were marginal. And as previously explained, reallocating and redistributing marginal functions can be considered reasonable accommodation. Second, legal flow has to do with the district court's treatment of the appellant's comparators. In addressing those examples, the district court saw a, quote, clear distinction, end quote, between them and appellant, which is that those employees who were injured off the job were given light duty status, while those employees who were injured on the job and had pending workers' compensation claims had to wait to receive limited duty status. Well, we believe this reasoning is inconsistent with the ADA because the ADA requires employers to reasonably accommodate all qualified disabled employees and does not relieve employers to unilaterally delay that duty for employees who fall into certain categories that the employer sets. Therefore, the district court holding implicitly read an exception into the employer's duty to accommodate that does not exist in the statute. And the reasoning of the district court was also factually flawed. Even if the court determines that the exception should be carved out from an employer's duty to reasonably accommodate a disabled employee, defendant's motion for summary judgment should have been denied because the plaintiff presented evidence relating to an John Troat who was injured on the job, but nevertheless received light duty work before his workers' compensation claim was accepted. Furthermore, appellant has uncovered and presented multiple instances of individuals who had not engaged in protected activity and had received more favorable treatment. Therefore, appellant is entitled to take his ADA discrimination claim to the jury. And lastly, on the race discrimination and retaliation claims, the district court's dismissal of appellant's discrimination and retaliation claims were both legally and factually flawed. First, as to appellant's race discrimination claim, the district court did not explain how Vargas would fail to prove his claim. It simply dismissed that claim by stating that Vargas' comparators were not similarly situated. As previously explained, the distinction that the court makes between light duty and limited duty cannot be justified under the ADA. Second, as discussed, Vargas presented evidence showing that another employee... If you want to save any time for rebuttal, now might be a good time to do that. Sounds good, Your Honor. I'm going to wrap up 30 seconds. Okay. Second, as discussed, Vargas presented evidence showing that another employee who was injured on the job as he was going to be accommodated before his workers' compensation claim was accepted. That carrier, that letter carrier was African-American, thereby making him a similarly situated comparator for the purposes of Title VII. Finally, as to appellant's retaliation claim, the district court dismissed that claim without explanation. Vargas presented evidence showing that people who did not engage in protected activity were treated more favorably. Therefore, that retaliation claim should go to the jury as well. Thank you. Thank you, counsel. Mr. Lane. May it please the court, counsel. First of all, Judge Eastbrook, Judge Scott or Judge Manning, can you hear me okay? We can hear you. Can you hear me okay? All right, thank you. Jose Vargas was a city letter carrier who couldn't carry mail because he had plantar fasciitis. The district court correctly found that the Postal Service had no vacant funded positions at the facility that he worked at that Vargas would have been able to fill. And it also found that the Postal Service treated Vargas no differently than other carriers. And so its judgment, granting summary judgment in favor of the Postal Service against Mr. Vargas' Rehab Act and race discrimination claims should be affirmed. Mr. Lane, do you two agree that those questions, we should focus on those issues with respect to an eight-day period of time? That is what a plaintiff seems to be focusing on. I think we take a look at all of the evidence, which spans more time than that. It is relevant, at least in terms of what happened with his workman's comp claim, in But I think that's a fair view of what we have. As far as the Rehab Act claim, it seems like, I mean, it's not your claim, so I can't ask you what your, you know, but I mean, I got to tell you, I was really confused on this because it sure seems to me that the plaintiff is saying there's a failure to accommodate a breach of the legal duty under the Rehab Act somewhere between March 14 and March 22, but not beyond that. That is unclear, Your Honor. We treat it as a broader question than that, but Your Honor did bring up one claim, did bring up one issue in regarding that eight-day period, and that was whether the person, whether Mr. Vargas would have been capable of performing his job during that time period, and our argument in front of the district court was that no, he was not capable of performing his job. He, when he went to ask for a modification of his job duties from his supervisor, he said, I can't do my work, I can't do this work anymore, I can't do these specific job work tasks that are in my work description, and then when he went, And is that because his doctor told him he can't lift more than 15 pounds and the C-27 route required lifting as much as 35 pounds? Right. Among other things, I believe the doctor also said that he couldn't stand for more than 30 minutes and he couldn't climb for more than 10 minutes. There are a number of things that he testified to during his deposition in addition to the weight restriction, but the bottom line is plantar fasciitis is on his feet and he uses his feet to carry the mail, so I would agree that he was not capable of performing the job at that point, and therefore, in our view, what we argued at summary judgment was that he wasn't qualified to perform that job. Be that as it may, the district court, that was not one of the district court's basis for granting a summary judgment motion, but of course, this court can review anything in the record, it can affirm on any basis on the record, and if in fact it finds that Mr. Vargas did not meet the first element, which is what we argued. I want to get right into the issue with definitions between light duty and limited duty, and it's something that I think needs to be clarified here. There are two different terms dealing with two different sets of laws, and Mr. Vargas has decided to try to commingle them to show that he has some type of case, a prima facie case under the Rehab Act or under Title VII. Light duty is something that the Postal Service may offer under the Rehabilitation Act pursuant to its collective bargaining agreement, Article 13, the National Association of Letter Carriers collective bargaining agreement with Mr. Vargas's union, and it says that the Postal Service should offer that work, see if light duty work is available, and should offer it if it's available, but because it's a Rehab Act situation, it's not required to create a job if there are no jobs or assignments that are available. The only evidence that we have here is that, or at least from the Postal Service's viewpoint, both the postmaster, the officer in charge, Keeney, and Mr. Vargas's Johnson, Mr. Vargas's supervisor Johnson said that there weren't, they didn't know of anyone who received light duty during this time period. Limited duty, on the other hand, is strictly a creature of the Workman's Comp Statute. Congress passed the Workman's Comp Statute to make sure that, to protect the workers that were injured on the job, so when you have somebody like Mr. Vargas who claims that he was, he injured himself on the job, once the Department of Labor accepts that claim, the agency then has to make work, any kind of tasks, so that the employee gets his minimum hours of work a day, regardless of whether these tasks are within their job description, and that's what Mr. Vargas said. Is that what you call limited duty? That's limited duty, Your Honor, right. So limited duty is when they have to provide something, I guess, under worker's comp? Right, under worker's comp. So what happens, is my understanding is what happens is once the, in coordination with the Department of Labor, the Postal Service would then have to issue, would have to allow them to do some type of like limited duty. Again, these are very similar terms, so I'll just call limited duty make work. They have to give them some type of make work tasks that aren't necessarily related to what they normally do. And if they can't do that, then the Department of Labor pays them compensation for the time that they're off. So that's something that is not determined by the Postal Service, it's something that's determined strictly by the Department of Labor. And in this case, the only evidence is that Mr. Vargas, just like the people that he's claiming are comparables, were given this limited duty make work after the Department of Labor finally approved their compensation request. And not only that, in this situation, and this just kind of relates back to your timing issue. In this situation, Mr. Vargas was paid for the entire period of time that was also paid for the entire period of time that his workman's comp claim was pending in front of the Department of Labor, which would have been from October all the way back to March, because he claimed that he was off work at that time period. So once again, we assert that Mr. Vargas has not shown that he is a qualified person with a disability under the provision, notwithstanding there is sufficient basis in the record to find that he's incapable of performing his job, and therefore that takes him out of a Rehabilitation Act analysis and entitles us to summary judgment on that element alone. But as far as element number three, there's no evidence that anyone was treated more favorably than Mr. Vargas. The only evidence is that there were no light duty assignments that were given. There was no modification of existing jobs that were given. It was only limited duty, this make work that was given to all these comparable employees that he's identified, and that only happened with the coordination with the Department of Labor after the Department of Labor approved each individual's compensation claim, including Mr. Vargas's. Was there any time when he was off work that he didn't get paid? No. No. In fact, that's an interesting point. He took time off of work, but he was ultimately compensated per the order of the Department of Labor, by the Postal Service, and per the order of the Department of Labor once it approved his claim some months later for that time. So he's always been, he's not out any money for the amount of time that he was off work. He's been fully compensated under the workman's comp provisions. Well, is there some cap on workers' comp? Is there something about using up workers' comp time that he wouldn't have in the future? Did he lose some benefit in the future for that? There's nothing in the, yeah, there's nothing in the evidence that shows that, Your Honor. The only thing in the record that we show is that he was, and this is in the briefs, he was fully paid for the time that he took off. And that's one of the other things that's interesting too here. One of the people that he's trying to point out is comparable. John Choate also had pending workman's comp claims that were filed earlier than Mr. Vargas. One of the things that, so he's arguing that Mr. Choate worked. Mr. Choate was given some light duties before the Department of Labor granted his workman's comp claim. But there's no evidence in the record to show that. All we have is a collection of undifferentiated time from Mr. Vargas' counsel. They don't show anything. All they do is they show that Mr. Choate may have worked in the time that he- Mr. Ling, your time has expired and this does not sound like an answer to Judge Mannion's question. So I- Okay, I'm sorry. We will finish up now. All right. Thank you, Your Honor. Mr. Sadeh, anything further? Your Honor, there's just a few more, a few more comments. One is that Mr. Ling again brought up the argument that Mr. Vargas is not a qualified individual under the ADA. Again, that issue was resolved by the District Court and the District Court decided that that issue should be left for the jury. Therefore, that issue is not up on appeal and it should not be re-decided. A court of appeals can affirm on any issue that was presented to the District Court. We're not bound by the District Court's view of these things. Yes, Your Honor, we understand. We're just clarifying that we didn't appeal that part of the decision. So regarding the light duty work, as Mr. Ling states, there is clear evidence we have pointed to that shows that John Choate, who also applied for workers' comp, received light duty before his workers' compensation was accepted. We pointed to specific parts of the evidence. You can look at page four of Exhibit G that we have cited and it specifically indicates that he was assigned light duty, not limited duty. And finally, there was no argument under retaliation claim by Mr. Ling, either in the briefs or right now, which means that the race retaliation claim should go to the jury. No comments by the District Court and no comments by the appeals. Thank you very much, counsel. The case is taken under advisement and the court will be in recess.